J-A14010-24

2024 PA Super 291

L & M REAL ESTATE DEVELOPMENTS, LLC

Appellant

v.

CONSOLIDATED RAIL CORPORATION

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
: No. 2925 EDA 2023
:

Appeal from the Order Entered October 23, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 201201840

BEFORE: LAZARUS, P.J., STABILE, J., and LANE, J.

OPINION BY LAZARUS, P.J.:                    **FILED DECEMBER 9, 2024**

L&M Real Estate Developments, LLC (L&M), appeals from the order, entered in the Court of Common Pleas of Philadelphia County, granting summary judgment in favor of Appellee Consolidated Rail Corporation (Conrail). After careful review, we affirm.

L&M is a limited liability company that has its principal place of business in Philadelphia. On December 17, 2020, L&M entered into an Agreement of Sale (Agreement) with Conrail for 1.98 acres of commercial property, located at 2750R Aramingo Avenue, in Philadelphia (Propery), for a purchase price of $2.4 million. The Property is zoned industrial and was restricted, by deed, from being used residentially. However, section 6(b) of the parties' Agreement permitted a purchaser to remediate the Property to a residential standard so that it could be used for residential purposes.

In order for the zoning on the Property to change from industrial to residential, the City of Philadelphia would have to approve a use variance. In a 2018 letter of intent to purchase the Property, L&M indicated that it intended to seek zoning approval to allow residential use of the Property, with the intent to construct townhomes as part of a large multi-family housing complex. In a subsequent letter of intent, dated July 2019, L&M issued a final plan to increase the number of townhouses on the Property.

Pursuant to section 2 of the Agreement, closing was to occur "on or before the earlier of 35 days following [Zoning Board of Adjustment] approval or 7/15/20, or such other time and place as shall be mutually agreed upon, excepting as hereinafter provided[.]" An addendum to the Agreement further provided, in relevant part:

> Purchaser shall use due diligence to obtain subdivision approval in an expedited manner, including *if necessary*, the filing for special exceptions, variances, or appeal. **In the event that subdivision approval cannot be obtained within ninety (90) days of the date of this Agreement**, for any reason other than a failure on the part of the Purchaser, **this Agreement shall thereupon be rendered null and all monies paid on deposit shall be returned to Purchaser without interest, and there shall be no further obligations between the parties hereto.** Purchaser shall copy Conrail on all correspondence and submissions, applications, and other information with any governmental entity arising out of or related to the application for subdivision.

> \*     \*     \*

> The Closing shall take place not later than ten (10) business days from receipt of final Zoning approval as provided in Section 2 (Closing) of the Agreement or at a specific time and place to be mutually agreed upon by the parties hereto.

Addendum: Survey & Subdivision Requirements, 12/17/19, at 6 (emphasis added).

Due to administrative delays caused by the COVID-19 Pandemic, L&M requested an extension of time to secure variance use approval and permits. The parties executed an amendment (First Amendment) on June 16, 2020, which extended the subdivision approval date until November 15, 2020. The First Amendment also provided that "if prior to November 15, 2020, [L&M] requests, in writing, a further extension of time to obtain its subdivision approval, Conrail shall not unreasonably decline a further thirty (30) day extension to December 15, 2020." *See* Conrail Letter, 6/16/20, at 2. Pursuant to the First Amendment, no further extensions beyond December 15, 2020, "shall be permitted without the express written consent of Conrail." *Id.* When L&M was unsuccessful in obtaining the necessary permits and approvals by the extended date, Conrail gave L&M a one-month extension to December 15, 2020. Finally, Conrail agreed to an additional two-week extension, requiring L&M to secure the necessary approvals by 5:00 PM on December 30, 2020.

Conrail refused to approve another amendment, requested by L&M, to further extend the closing date, citing the following reasons:

> Conrail was not fully kept in the loop as to zoning and subdivision approvals, applications[,] and related correspondence, so new information has recently come to light regarding the scope of the planned residential project. Conrail is unable to grant any further extensions. The Agreement of Sale, as amended by the two letter agreements, will automatically terminate on 12/30/2020[,]

pursuant to its terms. As no escrow deposits were made, the parties do not need to coordinate any deposit returns.

Email from Dana Janquitto to Dade J. Thornton, 12/29/20. Later that day, Conrail sent another email to L&M stating:

Conrail has elected not to cure encumbrances on the Title Report pursuant to Section 3 of the [Agreement]. Additionally, it's our understanding that all permits and approvals required for subdivision approval have not yet been received, so[,] among other things, any conveyance of the [P]roperty tomorrow would constitute an illegal subdivision pursuant to the Pennsylvania Municipalities Planning Code, and the applicable section of the Philadelphia ordinance. Thus, the contract also terminates pursuant to Section 14.

Email from Dana Janquitto to Dade J. Thornton, Larry McKnight, & Mo Rushdy, 12/29/20. Conrail gave L&M written notice of its election to terminate the Agreement pursuant to sections 3 and 14 of the Agreement. *See* Agreement, 12/17/19, at ¶ 3 (Title); *id.* at § 14 (Violation of Law).

On March 18, 2021, L&M filed a breach of contract action[1] against Conrail, alleging it breached the Agreement. The complaint sought specific performance, monetary damages in excess of $6.3 million, and included a claim for unjust enrichment. Conrail filed preliminary objections to the complaint. On May 25, 2021, L&M filed an amended complaint, no longer including a claim for unjust enrichment, alleging that Conrail acted in bad faith by "manufactur[ing] reasons to pull out of its deal with L&M in order to try to

_____

[1] L&M first commenced litigation by filing a writ of summons. Later, L&M filed *lis pendens* against the property, in contravention of section 7(b) of the Agreement. On November 10, 2023, L&M filed a praecipe to remove the *lis pendens* on the Property.

obtain a higher price for the Property." Amended Complaint, 5/25/21, at ¶ 4. L&M also alleged that Conrail "unilaterally and without cause [] terminated the [A]greement on the literal eve of the scheduled closing, December 29, 2020." *Id.* at ¶ 5.

Conrail filed preliminary objections to the amended complaint asserting: (1) there was no breach of the Agreement under the facts as pled; (2) even if there were a breach, L&M's damages were limited to return of the deposit, of which there was none; and (3) section 7(b) of the Agreement was a limitation of liability clause which, as a matter of law, did not permit recovery on the basis of bad faith. *See* Preliminary Objections, 6/15/21, at ¶¶ 23-25. On November 5, 2021, the trial court overruled Conrail's preliminary objections.

Conrail filed an answer and new matter to L&M's amended complaint. L&M filed a reply. On March 20, 2023, following the close of discovery, Conrail filed a summary judgment motion. L&M filed a response to Conrail's motion. On October 23, 2023, after considering "all matters of record," the trial court granted Conrail's motion and dismissed L&M's complaint concluding that, as a matter of law, section 7(b) was an enforceable limitations of damages provision. *See* Order, 10/23/23.

L&M filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. L&M presents the following issues for our review:

(1) Is [s]ection 7(b) of the Agreement [] between L&M [] and Conrail an exculpatory clause?

    (a) If [so], was it enforceable against L&M as written [and] did Conrail demonstrate that no genuine issue of material fact existed as to exceptions preventing [s]ection 7(b)'s enforceability?

(2) Is [s]ection 7(b) of the Agreement [] a limitation of liability clause?

    (a) If [so], was it enforceable as written [and] did Conrail fully demonstrate that no genuine issue of material fact existed which would preclude the application of [s]ection 7(b)?

(3) Is evidence indicating a genuine issue of material fact as to whether Conrail intentionally violated the Agreement [] in bad faith sufficient to preclude grant of summary judgment?

(4) When Conrail signed the Letter Amendment on December 15, 2022, did it take on an additional duty to "cooperate in good faith to finalize the terms of an additional extension" and did said duty require Conrail to[,] in fact[,] execute the proposed Third Amendment?

(5) Did Conrail's failure to respond to L&M's Counter Statement of Facts render those factual assertions admitted by Conrail?

Appellant's Brief, at 4-5.

Appellate review of an appeal from the grant of a motion for summary judgment is well-settled:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, [this] review is plenary.

> In evaluating the trial court's decision to enter summary judgment, [an appellate court] focus[es] on the legal standard articulated in the summary judgment rule. [*See*] Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not

merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, [an appellate court] will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne University Of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (citations and certain punctuation marks omitted).

Instantly, the parties' dispute centers on whether section 7(b) of the Agreement constitutes an exculpatory clause or a limitation of liability clause. While Conrail claims it is a limitation of liability clause that bars the instant action, L&M claims that the provision is an unenforceable exculpatory clause where Conrail acted in bad faith by defaulting on the Agreement.

Section 7(b) of the Agreement provides that if Conrail defaults by failing to comply with the contract's terms and conditions,

> [L&M] shall have the right to receive from Conrail the return of [L&M's] Initial Deposit and Additional Deposit[,] plus accrued interest, if any, which shall be [L&M's] sole remedy. [**L&M**] **acknowledges that under no circumstances, shall Conrail be liable for** [**L&M's**] **damages, consequential, actual, punitive, speculative, or otherwise.** [L&M] agrees that it will not and waives all right to file a *lis pendens* or other attachment.

Agreement, 12/17/20, at § 7(b) (emphasis added).

Limitation of liability clauses "are a way of allocating 'unknown or undeterminable risks' . . . and are a fact of everyday business and commercial life.'" *K&C, Inc. v. Westinghouse Elec. Corp.*, 263 A.3d 390, 393 (Pa. 1970). In Pennsylvania, even "[w]here one party to a contract[,] without any

legal justification, breaches the contract, the other party is entitled to recover [damages], **unless the contract provides otherwise**[.]" ***Conomos, Inc. v. Sun Co.***, 831 A.2d 696, 708 (Pa. Super. 2003) (emphasis in original). However, if a plaintiff can establish "some sort of fraudulent or tortious conduct, unconscionability, or an overriding public interest[,] a limitation of liability clause may not be enforced in whole or in part." ***Degliomini v. ESM Prods.***, 253 A.3d 226, 238 (Pa. 2021).

By contrast, "[a] valid exculpatory contract fully immunizes a person or entity from **any** consequences of its negligence." ***Id.*** (emphasis added). Exculpatory clauses are generally disfavored in the Commonwealth and "are subject to close scrutiny, strictly construed against the party seeking their protection, and enforced only provided certain criteria are met." ***Id.***

"Pennsylvania appellate courts recognize that there are differences between a contract [that] insulates a party from liability and one [that] merely places a limit upon that liability." ***DeFrancesco v. Western Pa. Water Co.***, 478 A.2d 1295, 1306 (Pa. Super. 1984) (concurrence, Spaeth, P.J.). Where a contractual clause limits damages and does not bar any cause of action, it is a limitation of liability clause, not an exculpatory clause. ***See Lamb v. CVS Pharm. LLC***, 704 F.Supp.3d 606, 612 (E.D. Pa. 2023), citing ***Valhal Corp. v. Sullivan Assoc., Inc.,*** 44 F.3d 195, 202 (3d Cir. 1995). Indemnity and exculpatory provisions, as opposed to limitation of liability clauses, are "disfavored and must meet certain conditions to be enforceable." ***Id.***

L&M claims that, in violation of the law of the case, the trial court erred by first deciding, on preliminary objections, "that [s]ection 7(b) of the Agreement [] was an exculpatory clause as a matter of law and then improperly used the factual record to decide that [s]ection 7(b) of the Agreement [] was instead a limitation of liability clause." Appellant's Brief, at 28.

When ruling on Conrail's preliminary objections, the court stated:

> [Conrail] argues that the limitation of liability provision in the [A]greement, which prohibits remedies other than the return of [L&M's] deposit, bars this action. **To evaluate this, the [c]ourt would have to consider facts beyond the complaint.** This provision is akin to waiver, which is an affirmative defense and must be ple[d] as "New Matter[,]" rather than raised [as] preliminary objections.

Order, 11/5/21, at n.1 (emphasis added).

We disagree with L&M's contention that the trial court determined at the preliminary objections stage that, as a matter of law, section 7(b) was an exculpatory clause. Rather, the court concluded that it could not make a legal determination of the issue based solely on the facts as alleged in the complaint. Instead, it needed a more fully developed record to determine, as a matter of law, whether section 7(b) is a limitation of liability provision. *See* Order, 11/5/21, at n.1 ("Defendant has raised several speaking demurrers, [one of which is the argument that the limitations of liability provision in the Agreement bars this action], which the court may not consider at this stage."). Thus, contrary to L&M's claim that the court violated "the law of the case," Appellant's Brief, at 30, we find that the court never decided the question

raised in Conrail's preliminary objections. Moreover, the doctrine does not even apply to this case where the same judge ruled on both Conrail's preliminary objections and summary judgment motion. *See Neidert v. Charlie*, 143 A.3d 384, 390 (Pa. Super. 2016 ) (law of case doctrine embodies "the concept that a court involved in the later phases of a litigated matter should not reopen questions **decided by another judge of that same court** or by a higher court **in the earlier phases of the matter**") (emphasis added). Thus, this issue is meritless.

L&M next contends that the trial court erred, as a matter of law, when it determined that section 7(b) of the Agreement was enforceable where "it is a fact-intensive question for the jury." Appellant's Brief, at 35. Specifically, L&M claims that because the trial court made "mistaken factual conclusions dismissing the possibility of procedural unconscionability," the issue regarding the enforceability of the clause must be made by a jury. *Id.*

"Absent unconscionability, limited liability provisions are binding on the parties that fashioned the terms of their agreement." *Vasilis v. Bell of Pa.*, 598 A.2d 52, 54 (Pa. Super. 1991). Procedural unconscionability occurs when "there is no meaningful choice on the part of the other party regarding the acceptance of the [contractual] provisions." *MacPherson v. Magee Mem. Hosp. for Convalescence*, 128 A.3d 1209, 1220 (Pa. Super. 2015). "Courts have refused to hold contracts unconscionable simply because of a disparity of bargaining power between the parties." *Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 53 (Pa. Super. 2017).

- 10 -

First, L&M did not raise the issue of procedural unconscionability in its response to Conrail's summary judgment motion. Thus, this claim is waived for failure to raise it below in the trial court. *See* Pa.R.A.P. 302(a). However, even if we were to address the claim on its merits, L&M would be entitled to no relief on appeal. While L&M may not have been represented by counsel when it negotiated the initial terms of the Agreement with Conrail, it did have counsel when it executed the two amendments extending the closing deadline in order to seek approvals; those amendments were incorporated into the Agreement. Moreover, L&M has provided no support for its claim that, simply because one party to a contract was unrepresented at the time of its execution, the contract must, therefore, be deemed to be unconscionable. L&M is a commercial entity run by managing principals who own and manage several real estate development companies and have engaged in over forty-five to fifty real estate transactions in Philadelphia, many of which required subdivision or zoning variance approvals. *See* Mohamad Rushdy Dep., January 10, 2023, at 22:13-22, 28:8-9, 38:14-23, 41:18-42:3-8, 49:1-22; *see also* Lawrence McKnight Dep., January 11, 2023, at 38:16-39:1-4.

Based on the record evidence, we find that the trial court was correct in concluding that there was no procedural unconscionability in the instant matter that needed to be put forth before a jury. The L&M principals were seasoned real estate managers who had engaged in numerous transactions, in the City of Philadelphia, involving subdivision or zoning change approvals. ***Cardinal***, ***supra***. ***See also Conomos***, ***supra*** at 708 ("Absent fraud or

unconscionability, courts should not set aside terms on which sophisticated parties agreed.").[2]

Finally, L&M argues that the trial court erred by not admitting its counter-statement of facts, which L&M claims precluded the entry of summary judgment. Specifically, L&M asserts that because Conrail's reply "contained no specific responses to L&M's [c]ounter-[s]tatement of [m]aterial [f]acts," the court should have deemed those facts admitted. Appellant's Brief, at 46.

Notably, neither the Philadelphia nor Pennsylvania Rules of Civil Procedure requires a movant to file a responsive pleading to a non-movant's counter-statements of fact in a response to a summary judgment motion. ***See also*** Pa.R.A.P. 1029(b) (averments in pleading, **to which responsive pleading required**, are admitted when not denied specifically or by necessary implication). Rather, the rules require the non-movant, here L&M, to respond to the motion or potentially suffer judgment being entered against it for failure to aver, much less produce evidence, of any dispute as to any issue of material fact. ***See*** Pa.R.A.P. 1035.3(a) (adverse party to motion for summary judgment "may not rest upon mere allegations or denials in pleadings[,] **but must file a response within thirty days after service of the motion**") (emphasis added). ***See also Payton v. Pennsylvania Sling***

---

[2] In fact, Mohamad Rushdy, an L&M principal, testified at his deposition that he considered Riverwards Group, a "marketing name and marketing umbrella that encompasses . . . L&M subsidiaries," a "**sophisticated real estate development company**." Rushdy Dep., January 10,2023, at 41:12-16 (emphasis added).

*Co.*, 710 A.3d 1221, 1224 (Pa. Super. 1998) (non-moving party's failure to respond appropriately to summary judgment motion permits court to enter judgment in favor of moving party); Pa.R.C.P. 1035.3(d) ("Summary judgment may be entered against a party who does not respond.").[3]

Here, where the clause contained in the parties' commercial Agreement placed a limit upon the damages that a non-defaulting party could recover and did not completely foreclose any cause of action against that party, the clause is properly categorized as a limitation of liability provision. *See DeFrancesco*, *supra*. When L&M had not yet secured the required approvals prior to the thrice-extended closing date and had also failed to apprise Conrail about the status of zoning and subdivision approvals, any outstanding

---

[3] We also note that L&M fails to set forth any specific material fact alleged in its response that was not addressed in Conrail's reply or cite to any legal authority asserting that a summary judgment movant is required to file a reply to a non-movant's response. Accordingly, we could find this claim waived. *See Commonwealth v. Woodard*, 129 A.3d 480, 509 (Pa. 2015) ("where an appellate brief fails to . . . develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for him.") (citation omitted).

Notwithstanding the fact that Conrail was not required to file a responsive pleading to L&M's response to its motion for summary judgment, we note that in its reply to L&M's response, Conrail did aver that: (1) the Agreement is not ambiguous; (2) subdivision and zoning approvals were closing prerequisites to the Agreement; (3) L&M's allegations of bad faith, which included claims of a Conrail employee's malfeasance, is irreconcilable with the language in the Agreement and immaterial in breach of contract actions; (4) section 7(b) of the Agreement is not an exculpatory clause; and (5) L&M raises, for the first time, an allegation of "impracticability of performance." *See* Conrail Reply to Response to Summary Judgment Motion, 4/28/23, at 2-13.

applications, and changes in the scope of the planned residential project, Conrail had the right to terminate the Agreement. **See** Addendum: Survey & Subdivision Requirements, 12/17/19, at 6 ("Purchaser shall copy Conrail on all correspondence and submissions, applications, and other information with any governmental entity arising out of or related to the application for subdivision."). Thus, Conrail did not act in "bad faith" by terminating the Agreement when zoning board approval had not yet been obtained by the deadline. **See also Conomos**, **supra** ("Implied duties [like that of good faith and fair dealing] cannot trump the express provisions in the contract.").

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/9/2024