J-A05041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| A&B FINE PROPERTIES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| STRUCTURAL MODULARS, INC. | : | No. 967 WDA 2024 |

Appeal from the Order Dated July 17, 2024
In the Court of Common Pleas of Clarion County Civil Division at No(s):
543 CD 2022

BEFORE: MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED: May 13, 2025**

A&B Fine Properties, LLC ("A&B"), appeals from the grant of summary judgment entered in the Court of Common Pleas of Clarion County in favor of appellee, Structural Modulars, Inc. ("SMI"). A&B argues it was entitled to the return of a downpayment it made when it entered into a later-canceled contract with SMI. In granting summary judgment, the trial court found that a contractual provision permitting A&B to cancel the contract also unambiguously stated the downpayment was nonrefundable. We agree and, thus, affirm.

On July 1, 2021, A&B, a Pennsylvania limited liability company located in Pittsburgh, Pennsylvania, entered into an agreement with SMI, a Pennsylvania corporation located in Strattanville, Pennsylvania, for SMI to

_____

*Retired Senior Judge assigned to the Superior Court.

build a modular home on Lotus Way in Pittsburgh (the "Lotus Way" contract). A&B paid a deposit in the amount of $14,200 for the Lotus Way contract.

On July 23, 2021, A&B entered into an agreement with SMI for SMI to build a modular home on Boyle Street in Pittsburgh (the "Boyle Street" contract). A&B paid a deposit in the amount of $14,900 for the Boyle Street contract. The key sections of the Lotus Way and Boyle Street contracts are essentially identical to each other.

On or about March 29, 2022 or April 6, 2022, SMI sent A&B price increase notices for each of the contracts pursuant to Section 2 of those contracts. Section 2 states in pertinent part:

> PRICE AND TERMS: The sales price listed on the Sales Agreement (the "Sales Price") is based upon current material costs available to [SMI]. In the event that [SMI] material costs increase between the date of the Sales Agreement and the Date the Unit is placed on line for construction, [A&B] agrees that [SMI] shall have the right to increase the Sales Price to include the increases in material costs realized by [SMI]. [SMI] agrees that in the event the Sales Price increases due to an increase in material cost, [SMI] will notify [A&B] of the amount of the increase and the reason for the increase prior to placing [A&B's] order on the line for production (the "Price Increase Notice"). [A&B] shall have the right to cancel the Sales Agreement upon receipt of the Price Increase notice by notifying [SMI] in writing, which writing shall be mailed to [SMI] certified return receipt requested within ten (10) days of [A&B] receipt of the Price Increase Notice. [Setting forth obligations when Sales Price is affected by a change in building code requirements.] [A&B] agrees to pay a deposit equal to at least ten (10%) percent of the Sales Price (larger deposits may be required under certain conditions) to [SMI] concurrently with the execution of the Sales Agreement (the "Deposit"). The Deposit shall be non-refundable but will be applied toward the invoice amount. [Setting forth A&B's obligations to pay balance of sales price and freight charges].

- 2 -

*See* SMI's Motion for Summary Judgment, Exhibits 1 & 3, p.2.

In response to SMI's notices of price increase, A&B, through its attorney, sent SMI a letter on April 11, 2022, canceling both the Lotus Way and Boyle Street contracts, and requesting the return of its deposits. *See* A&B's Complaint in Civil Action, Exhibit 6. On May 12, 2022, A&B, again through its attorney, sent SMI a letter stating that the "[f]ailure to return the deposits within ten (10) days shall result in the initiation of legal proceedings." *Id.*, Exhibit 7.

On June 6, 2022, A&B initiated legal proceedings by serving on SMI a civil complaint seeking the return of the deposits, $29,100.00, plus costs. *See* Civil Docket; *see also* Complaint in Civil Action. On August 15, 2022, SMI filed an answer to the complaint in which it denied it was obligated to return the deposits and sought, via counterclaim, recompense for costs it incurred in excess of the deposits. *See* SMI's Answer, New Matter and Counterclaim to Complaint in Civil Action, 1-6. On September 12, A&B filed an answer to SMI's new matter and counterclaim.

On January 27, 2023, SMI filed a motion for summary judgment against A&B's claim for return of the deposits based on the provision in each of the contracts that "the deposit shall be nonrefundable." SMI's Motion for Summary Judgment, ¶ 9. In its brief in opposition to the motion, A&B argued that the right to cancel the contracts would be "basically an illusion" if it did not entail the return of each deposit. A&B's Brief in Opposition, 2/15/23, 6. On April 4, 2023, the trial court filed an opinion stating that the contracts "clearly and

unambiguously state[] that the deposits are nonrefundable." Opinion and Order, 4/4/23, 3 (unpaginated).[1] Accordingly, the court entered an order granting SMI's motion for summary judgment and dismissing A&B's complaint. *Id.*, 4 (unpaginated).

On May 2, 2023, A&B filed an appeal from the April 4, 2023 order. On May 17, 2023, it filed in the trial court an application for determination of finality *nunc pro tunc*. Although granted by the trial court, the application had been filed beyond the 30-day period permitted by rule. Pa.R.A.P. 341(c)(1). As a result, this Court quashed the appeal. Order, 5/31/23 (*A&B v. SMI*, Docket No. 502 WDA 2023).

On March 28, 2024, after the matter was remanded to the trial court, A&B filed a motion for summary judgment with respect to SMI's counterclaim. On July 17, 2024, the trial court filed an opinion and order stating that under the express terms of the contract, SMI could not require A&B "to pay additional expenses beyond the deposits under the facts of this case." Opinion and Order, 7/17/24, 4 (unpaginated). Accordingly, it entered an order granting A&B's motion for summary judgment and dismissing SMI's counterclaim. *Id.*, 6 (unpaginated).

A&B filed a timely notice of appeal on August 2, 2024. The trial court ordered a concise statement of the errors complained of on appeal. *See*

---

[1] The Opinion and Order is dated April 3, 2023, but it is noted on the order, and confirmed on the docket, that it was served on the parties on April 4, 2023. The date of the Opinion and Order for our purposes, therefore, is April 4, 2023. *See* Pa.R.A.P. 108; Pa.R.Civ.P. 236(b).

Pa.R.A.P. 1925(b). A&B complied and raised a single claim of error in the granting of SMI's motion for summary judgment. The trial court filed an opinion incorporating its opinion and order of April 4, 2023.

A&B states the question for review as follows:

Did the trial court commit an error of law or abuse its discretion when it found that there was no genuine issue of material fact and that [SMI] was entitled to judgment as a matter of law as to [A&B's] Complaint when it granted [SMI's] Motion for Summary Judgment and dismissed [A&B's] Complaint by Order dated April 3, 2023, wherein the Court ruled that the contracts were clear that deposits were nonrefundable notwithstanding the fact that there were other provisions in the contracts which allowed [A&B] to terminate the contracts based upon certain events occurring?

Appellant's Brief, 5.

In reviewing a grant of summary judgment:

… this Court's standard of review is *de novo* and our scope of review is plenary. ***Pyeritz v. Commonwealth of Pa., State Police Dep't***, 32 A.3d 687, 692 (Pa. 2011). A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010). The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. ***Id.*** The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." ***Toy v. Metro. Life Ins. Co.***, 928 A.2d 186, 195 (Pa. 2007).

***Bourgeois v. Snow Time, Inc.***, 242 A.3d 637, 649–50 (Pa. 2020) (parallel citations omitted).

- 5 -

Here, the resolution of the dispute between the parties depends upon the meaning of the contract where it provides that the deposit is non-refundable. Contract interpretation is an issue of law for which our standard of review is *de novo*. **SBA Towers II LLC v. Wireless Holdings, LLC**, 231 A.3d 901, 907 (Pa. Super. 2020) (*en banc*); **Palmieri v. Partridge**, 853 A.2d 1076, 1078 (Pa. Super. 2004).

> It is also well[-]established that under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties.
>
> In the cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.

**SBA Towers**, 231 A.3d at 908 (**quoting Lenau v. Co-eXprise, Inc.**, 102 A.3d 423, 429-30 (Pa. Super. 2014) (internal citations omitted)).[2] Moreover,

> Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.

---

[2] "When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." **Lenau**, 102 A.3d at 429, (**quoting Kripp v. Kripp**, 849 A.2d 1159, 1163 (Pa. 2004).

*Lenau*, 102 A.3d at 430 (*quoting Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (internal citations omitted)). Under the "plain meaning" rule, the court must interpret the terms as manifestly expressed in the contract, rather than as silently intended by a party. *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982).

In finding the deposits were non-refundable, the trial court analyzed the contracts at issue as follows:

> Under the express terms of the contracts, the deposits were owed "concurrently with the execution of the Sales Agreement[s]" and not paid according to any performance of the contract. The contract clearly and unambiguously states that the deposits are nonrefundable. The language permitting [A&B] to cancel the contracts appears in the same paragraph that states deposits are nonrefundable and nothing indicates that cancellation of the contract entitles [A&B] to a refund. Cancelling the contract terminated SMI's obligation to build two modular homes and [A&B's] obligation to pay the full contract price. Thus, interpreting the express terms of the agreement, [A&B] is not entitled to a refund despite cancelling the contracts.

Opinion and Order, 4/4/23, 3 (unpaginated).

A&B argues on appeal that the trial court erred because other sections of the contracts contradict the court's conclusion that the deposits were non-refundable thereby creating an issue of material fact. *See* Appellant's Brief, 12. Specifically, it points to Section 4 of the contracts and the paragraph concerning "Customers Cancellation or Failure to Accept Unit." *Id.* That subsection provides for application of the deposit to additional costs incurred by SMI "[i]n the event [A&B] fails to accept delivery of any Unit, or in the event that [A&B] cancels the order after [SMI] has scheduled the Unit for

production, or in the event that [A&B] fails to pay for the Unit within thirty (30) days of the Ready Date." Complaint, Attachments 1 & 3, 2. That the contract provides for specific application of a deposit where cancellation of the contract occurs "after [SMI] has scheduled the Unit for production," and foresees additional costs for SMI, does not imply that the deposits are refundable where A&B cancels the contract before the Unit is scheduled for production. Certainly, there was no allegation that A&B canceled the contracts after SMI had scheduled a unit for production.

Instead of providing a cogent reason to find section 4 applicable, A&B argues that "there are multiple contradictory provisions" which raise a "genuine issue of material fact and maybe even clear that there is no genuine issue of material fact that [A&B] is entitled to the return of [its] deposits[.]" Appellant's Brief, 13. However, A&B offers no reasoning to find that different provisions for how the deposits will be credited under different circumstances – none of which are alleged to be applicable here and none of which provide for refunding the deposits – support its claim that the deposits are refundable despite the clear contractual language that they are non-refundable.

After our review, we conclude that the trial court did not err. The unambiguous language of each contract provides that the deposits are non-refundable and also provides for differing application of the deposits towards the total owed to SMI dependent on particular circumstances. These contractual terms are neither contradictory nor ambiguous. **Lenau**, 102 A.3d at 430 (contractual terms are ambiguous only if capable of more than one

reasonable interpretation when applied to particular facts). The contracts at issue here are clear that the deposits are non-refundable. **SBA Towers**, 231 A.3d at 908 (courts must ascertain the intent of the parties from the contract)

Lastly, A&B argues that its allegations are similar to those raised in **Ragnar Benson, Inc. v. Bethel Mart Associates**, 454 A.2d 599 (Pa. Super. 1982), which is a case involving the denial of summary judgment. **See** Appellant's Brief, 13-14. We are not persuaded.

Unlike here, the contract at issue in **Ragnar** was for "construction of a shopping mall" and had been signed "before the construction plans were in final form," because the Bethel Mart Associates, the appellant, "had construction financing which was about to expire." **Ragnar**, 454 A.2d at 600. Ultimately, the jury found that appellant caused the breach of the contract. **Id.** at 602. Nonetheless, Bethel Mart Associates argued on appeal "that it was error for the trial court to deny [its] Motion for Summary Judgment Regarding Alleged Lost Profits and Overhead." **Id.** This Court held that:

> Under the instant facts, the wording of the language of the contract as to damages awarded for breach was quite complex and presented an undoubted factual dispute for the court's consideration. Upon review of the contract, this [C]ourt discovered several questions that apparently were never, in the end, explored below. One simple example would be the meaning of the term "adjusted Guaranteed Maximum Cost" as alluded to in paragraph 15.2. Under those circumstances, it was proper for the trial court to refuse to settle the matter on summary judgment.

**Ragnar**, 454 at 603.

In contrast, the only question here is the meaning of the word "non-refundable." We do not find that its definition is either "quite complex" or "an

undoubted factual dispute" such as required the denial of summary judgment in **Ragnar**. We note further that in determining the deposits were non-refundable, the contracts and record before us are far less complex than the contract at issue in **L & M Real Estate Developments, LLC v. Consolidated Rail Corporation**, 328 A.3d 1068 (Pa. Super. 2024), which this Court held was amenable to summary judgment where the contract language in question was an enforceable limited liability clause. **Id.** at 1073-76.[3]

Accordingly, we agree with the trial court that summary judgment was properly entered in this matter in favor of SMI.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/13/2025

---

[3] Albeit not central to the decision in **L & M** or the instant matter, the contract in **L & M** provided that "monies paid on deposit shall be returned" under specified circumstances. **L & M Real Estate Developments, LLC v. Consolidated Rail Corporation**, 328 A.3d 1068, 1071 (Pa. Super. 2024). Where a contract could provide for a refundable deposit under specified circumstances, it follows that a contract could also provide that a deposit is non-refundable. A&B has not presented any argument that such clause would be unlawful. We note further there was no allegation of fraud or unjust enrichment against SMI.